UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAFRAN ELECTRONICS & DEFENSE SAS, *et al.*,

                          Petitioners,

-v-

EXAIL SAS,

                          Respondent.

24-CV-2325 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    This case concerns a petition to vacate an arbitration award. Presently before the Court is Respondent's motion to dismiss the petition as untimely under the Federal Arbitration Act, 5 U.S.C. § 12. For the reasons that follow, the motion is granted.

**I.    Background**

    The Court assumes familiarity with the factual and procedural history of this case, only a brief recitation of which is necessary for resolution of the present motion and none of which is in dispute. The proceedings in this Court began on March 27, 2024, when Safran Electronics & Defense SAS and Safran Electronics & Defense Germany GMBH (collectively, "Petitioners") filed a petition to vacate an International Chamber of Commerce ("ICC") partial arbitration award (the "Petition") in favor of Respondent Exail SAS. (ECF No. 1.)

    In 1993, predecessors to the parties in this case entered a "License Agreement" governing Respondent's predecessor's license of "Fiber-Optic Gyroscope-related know-how" to Petitioner's predecessor. (ECF No. 23 ("Am. Pet.") ¶ 8.) In addition to governing that license, the agreement also provides for the forums and governing law of arbitrations between them in the event of two types of disputes. First, Article IX(B) "provides that any dispute between the licensee and licensor that cannot be settled through negotiations and a mini-trial shall be settled

by an *ad hoc* arbitration seated in Paris." (Am. Pet. ¶ 11.) And second, Article IX(C) "provides that where a dispute arises from [one particular type of sale], the dispute will instead be settled in an ICC arbitration seated in New York." (*Id.* ¶ 13.) In 2018, both parties sought arbitration; Petitioners initiated an ad hoc arbitration in Paris, and Respondent initiated an ICC arbitration in New York. (*Id.* ¶¶ 15-16.) On May 10, 2018, the Paris arbitration panel issued a partial award finding that it had jurisdiction to decide the dispute between the parties. (*Id.* ¶ 17.) On December 14, 2023, the New York arbitration panel issued a partial award finding that it was of competent jurisdiction, as well. (*Id.* ¶ 18.)

In the ICC arbitration, the parties executed a "Confidentiality Agreement" that governed, in part, how they were to treat unredacted awards issued by the ICC arbitration panel. The agreement provides:

> In case any arbitral tribunal constituted under Article 9 of the 1993 License and Know-How Agreement includes, refers to or describes Confidential Material in its award, the Parties will jointly prepare a second version of such award within 7 days of the notification of such award by the ICC Secretariat, redacting the Confidential Material. To the extent the Parties disagree on the scope of proper redactions of the award, either Party may seek a ruling from the Tribunal within fourteen (14) days of the notification of this award by the ICC Secretariat, failing which the unredacted version will be deemed to contain no Confidential Material. For this purpose, the Parties agree that should the Tribunal decide to issue an award finally disposing of the case, it should proceed by issuing a partial final award while reserving the topics of redactions and costs for subsequent decisions.
>
> . . .
>
> Only the redacted version of the award, to the extent there is one, shall be used for confirmation, recognition, annulment or enforcement purposes, unless otherwise required by the law where its confirmation, recognition, annulment or enforcement is sought.

(ECF No. 1-3 at 7-8.)

On February 20, 2024, the parties jointly agreed on confidentiality redactions to be made to the ICC's partial final award and shared them with the ICC Secretariat. (ECF No. 30 ("Opp."))

at 15; ECF No. 26 ("Mem.") at 6.)  The ICC Secretariat responded that "[t]he redacted version of the partial award agreed upon by the parties is not the original partial award dated 14 December 2023 and rendered by the arbitral tribunal."  (Mem. at 6.)  The Secretariat thus rejected the parties' request to issue a redacted award.  (*Id.*)

On March 25, 2024, counsel for Petitioners emailed Respondent's ICC arbitration counsel, notifying them of their intent to file a petition to vacate the partial final award in the Southern District of New York and requesting a waiver of service.  (ECF No. 1-4 at 3.)  Respondent's arbitration counsel refused, indicating that it lacked authority to waive or accept service on behalf of Respondent in the federal court proceeding.  (*Id.* at 2.)  On March 27, 2024, counsel for Petitioners again emailed Respondent's ICC arbitration counsel, this time attaching a copy of the Petition that was filed in this Court the same day.  (*See* ECF No. 11-4 at 2; ECF No. 11-5.)  Respondent's arbitration counsel reiterated its objection to service.  (ECF No. 11-6 at 2.)

On April 2, 2024, Petitioners moved this Court for an order of alternative service of Respondent pursuant to Federal Rule of Civil Procedure 4(f)(3) and for an order *nunc pro tunc* that the March 27, 2024 email constituted effective service.  (ECF No. 11.)  On April 4, 2024, the Court ordered Respondent to respond to the motion by April 11, 2024.  (ECF No. 12.)  On April 5, 2024, Respondent opposed the motion for alternative service and requested a briefing schedule on its forthcoming motion to dismiss the petition.  (ECF No. 16.)

On April 22, 2024, Petitioners amended the Petition.  (Am. Pet.)  On April 25, Respondent moved to dismiss the Petition (ECF No. 25) and filed an accompany memorandum of law in support (Mem.).  Petitioners opposed the motion on May 16, 2024 (Opp.), and Respondent replied in further support on May 27, 2024 (ECF No. 31 ("Reply")).

## II. Discussion

The Court construes Respondent's motion to dismiss the Petition for being untimely as being pursuant to Federal Rule of Civil Procedure 12(b)(5), "which is the proper vehicle for challenging the sufficiency of service of process." *W.J. Deutsch & Sons Ltd. v. Zamora*, No. 21-CV-11003, 2023 WL 5609205, at *3 (S.D.N.Y. Aug. 30, 2023) (quotation marks omitted). "In considering a motion to dismiss pursuant to Rule 12(b)(5), the Court may look beyond the pleadings, including to affidavits and supporting materials, to determine whether service was proper." *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 215 (S.D.N.Y. 2021).

"Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. That requirement, imposed by the Federal Arbitration Act ("FAA"), permits no statutory or common-law exceptions. *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984). "Accordingly, a party may not raise a motion to vacate, modify, or correct an arbitration award after the three-month period has run." *Terwilliger v. Res. Am., Inc.*, No. 22-CV-9610, 2023 WL 3582342, at *2 (S.D.N.Y. May 22, 2023) (quotation marks omitted). FAA Section 12 specifies that the three-month clock begins when the arbitration award is "filed or delivered," which in this Circuit means "when an award is issued, not when it is legally served upon the parties to the arbitration." *Id.* at *3 (collecting cases).

### A. The Parties' Confidentiality and Email Communication Agreements

Petitioners' first two arguments for timeliness are based on agreements they made with Respondent concerning their ICC arbitration. First, they argue that because the parties agreed that "only the redacted version of the award . . . shall be used for confirmation, recognition, annulment or enforcement purposes" (ECF No. 1-3 at 7), the FAA's three-month limitations period did not commence until February 20, 2024—the date that the parties jointly agreed on

4

redactions to the ICC's award. (Opp. at 24 (cleaned up), 23.) As a starting matter, the text of the agreement clearly does not speak to any tolling effect the redactions would have on a previously issued award. The Court is not inclined to read a provision tolling the limitations period of the FAA into an agreement that makes no mention of that statute based on nothing more than the word "used." *See Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 18 (2d Cir. 2018) ("[W]hen the negotiated contract is between sophisticated parties . . . 'courts should be extremely reluctant to interpret an agreement as impliedly stating something.'") Moreover, Respondent is correct that the redacted version of the award was never "filed or delivered" as is required by FAA Section 12, since it was not issued by the ICC. (Reply at 9.) So even on Petitioners' theory, for the agreement to have tolling effect, it must override the FAA's requirement that an award be "filed or delivered" in order to start the limitations period. But the agreement does the opposite, clarifying that the redacted version is to be "used" only "unless otherwise required by the law where its confirmation, recognition, annulment or enforcement is sought." (*Id.* at 10 (quoting ECF No. 1-3 at 6-7).) So even if the confidentiality agreement did set an alternative commencement date (which by its text it did not), it explicitly contemplated that controlling law in the jurisdiction of the court in which vacatur was sought (here, the FAA) would override such a provision. Accordingly, because the ICC's award was "filed or delivered" only once—on December 27, 2023 (Reply at 5)—that is the date Section 12's three-month period commenced.

Second, Petitioners argue that because the parties agreed to email service in the ICC arbitration, that agreement extends to this proceeding, as well. (*See* Opp. at 24-26.) Not so. Petitioners do not offer any language from that agreement purporting to cover a proceeding in a different jurisdiction, with different attorneys, over different subject matter. In a nearly identical situation, the Second Circuit arrived at the same conclusion, explaining that "even assuming the

parties did agree to email service in the arbitration, that agreement did not constitute . . . written consent to service of papers by email in a subsequent lawsuit brought in federal court to vacate the arbitration award." *Dalla-Longa v. Magnetar Cap. LLC*, 33 F.4th 693, 696 (2d Cir. 2022). Here, all Petitioners argue is that "[t]he Parties have, at all times, communicated by email both concerning the underlying arbitrations, and relating to the proceedings before this Court." (Opp at 25.) Like in *Dalla-Longa*, that does not constitute a waiver of service, as Petitioners' counsel evidently realized when emailing with Respondent's arbitration counsel (*see* ECF No. 1-4 at 3). Because Petitioners cannot cite any specific language authorizing email service in this proceeding, and because Petitioners' counsel manifested an understanding of the applicable deadline during the three-month period that is contrary to the interpretation offered now, the Court determines that the parties have not agreed to email service in this action.

### B. Federal Rule of Civil Procedure 4(f)

That leaves the email to Respondents' arbitration counsel on March 27, 2024—the final day of the FAA Section 12 limitations period. Where the adverse party on a motion to vacate an arbitration award is a foreign resident, Federal Rule of Civil Procedure 4 governs service of process, and thus, whether notice was effectuated within the FAA's three-month period. *Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 732 F. Supp. 2d 293, 304 (S.D.N.Y. 2010), *rev'd on other grounds*, 668 F.3d 60 (2d Cir. 2012); *see also W.J. Deutsch*, 2023 WL 5609205, at 4 & n.3 (collecting cases); *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 812 (2d Cir. 2022) ("Rule 4 sets forth the basic procedures for serving process in connection with arbitral awards."). "Rule 4(h)(2) provides that foreign corporations may be served 'in any manner prescribed by Rule 4(f) for serving an

individual,' except personal service." *Long v. MTN Grp. Ltd.*, No. 23-CV-5705, 2024 WL 4664619, at *4 (E.D.N.Y. Sept. 30, 2024) (quoting Fed. R. Civ. P. 4(h)(2)).[*]

Where there is an "internationally agreed means of service" applicable to the foreign respondent, Rule 4(f) generally provides for two types of valid service: first, by that internationally agreed means—so long that it "is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents"; or second, "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1), (3). "[C]ourts in the Second Circuit 'have repeatedly recognized that there is no hierarchy among the subsections in Rule 4(f).'" *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 341 (E.D.N.Y. 2021) (collecting cases). The parties here do not dispute that the relevant internationally agreed means of service under Rule 4(f)(1) in this case is the Hague Convention. (*See* Mem. at 11-14; Opp. at 16-20.)

"The Hague Convention of 1965 was intended to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time." *RDW Cap., Inc. v. BE Indus., Inc.*, No. 17-CV-7195, 2021 WL 3141939, at *2 (S.D.N.Y. July 26, 2021) (quotation marks omitted). That agreement "provides for several alternate methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir. 2005). It is the law in this Circuit that good-faith, but incomplete,

---

[*] Petitioners' contention that the service requirement is satisfied wherever the responding party has actual notice of a petition to vacate an arbitration award (*see* Opp. at 20-21) is incorrect. That proposition conflicts with the plain text of FAA Section 12, Rule 4, and authority from the Second Circuit.

attempts at service under the Hague Convention are ordinarily deemed valid where the respondent received actual notice. *Id.* at 301; *see also W.J. Deutsch*, 2023 WL 5609205, at *5 (collecting cases); *Monsoon Blockchain Storage, Inc. v. Magic Micro Co.*, No. 22-CV-3114, 2024 WL 3466796, at *3 (S.D.N.Y. July 19, 2024) ("In *Burda*, the Second Circuit deemed service completed where plaintiff attempted in good faith to comply with the Hague Convention and [the defendant did] not dispute having received the complaint . . . , thus negating any potential prejudice." (quotation marks omitted)). That approach reflects the Second Circuit's emphasis on actual notice in applying the requirements of the Hague Convention, as well as the recognition that service under that agreement may often take longer than the three-month period permitted by FAA Section 12. *See W.J. Deutsch*, 2023 WL 5609205, at *5-6; *United Nat'l Ret. Fund v. Ariela, Inc.*, 643 F. Supp. 2d 328, 335 (S.D.N.Y. 2008) ("[T]he Second Circuit has expressly rejected . . . formalistic challenges to service of process carried out by a State's Central Authority under the Hague Convention."); *Aircraft Engine Lease Fin., Inc. v. Plus Ultra Lineas Aereas, S.A.*, No. 21-CV-1758, 2021 WL 6621578, at *1 (S.D.N.Y. Apr. 23, 2021).

Here, Respondent is correct that Petitioners may not make use of this Circuit's permissive approach to Hague Convention service because, unlike in *Burda*, *W.J. Deutsch*, or *Monsoon Blockchain*, Petitioners did not attempt any service method approved by the Hague Convention. (*See* Reply at 6-7.) "Therefore, [Petitioners] [have] not made a showing that [they] 'reasonably attempted to effectuate service' on [Respondent]." *Live Brands Holdings, LLC v. Gastronomico Gracias a Dios, Sociedad Responsabilidad Limitada de Capital Variable*, No. 20-CV-1213, 2020 WL 13855620, at *2 (S.D.N.Y. May 13, 2020) (quoting *Devi v. Rajapaska*, No. 11-CV-6634, 2012 WL 309605, at *1-2 (S.D.N.Y. Jan. 31, 2012)). Accordingly, the Court declines to

8

exercise its discretion to deem Petitioners' counsel's March 25, 2024 or March 27, 2024 emails to Respondent's arbitration counsel as completed Hague Convention service.

Petitioners are correct, however, to observe that they are "not required to attempt service through the other provisions of Rule 4(f) . . . before the court may order alternative service pursuant to Rule 4(f)(3), because there is no hierarchy among the subsections in Rule [4](f)." (Opp. at 17 (quoting *W.J. Deutsch*, 2023 WL 5609205, at *16).) That principle, dictum in *W.J. Deutsch* but often explained by other courts in this Circuit, permits courts to order alternative service—sometimes, *nunc pro tunc*—even where it cannot conclude that Hague Convention service was completed.  *See, e.g.*, *Aircraft Engine*, 2021 WL 6621578, at *1-3; *Group One*, 523 F. Supp. 3d at 341; *Equipav S.A. Pavimentação, Engenharia e Comercia Ltda. v. Bertin*, No. 22-CV-4594, 2022 WL 2758417, at *2-5 (S.D.N.Y. July 14, 2022).

District courts, in their sound discretion, may order any method of alternative service under Rule 4(f)(3) so long as the method does not violate an international agreement or constitutional due process. *AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14-CV-9913, 2015 WL 3457452, at *4 (S.D.N.Y. June 1, 2015). "Additionally, courts in the Southern District of New York 'generally impose two additional threshold requirements before authorizing service under Rule 4(f)(3): (1) showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary.'" *Hardin v. Tron Found.*, No. 20-CV-2804, 2020 WL 5236941, at *2 (S.D.N.Y. Sept. 1, 2020) (quoting *Devi*, 2012 WL 309605, at *1).  There is also the issue—a subject of some debate in this Circuit—of whether the court should grant a request for alternative service under Rule 4(f)(3) *nunc pro tunc*; though ultimately, the Court need not reach that question because Petitioners fail to meet the threshold requirements for an order of alternative service.

As Respondent does not contest, service by email on arbitration counsel does not violate any international agreement or notions of constitutional due process. *See W.J. Deutsch*, 2023 WL 5609205, at *7-8 ("Service by email comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant and when the movant supplies the Court with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address." (cleaned up) (quoting *Convergen Energy LLC v. Brooks*, No. 20-CV-3746, 2020 WL 4038353, at *6-7 (S.D.N.Y. July 17, 2020))). However, Petitioners do not make an adequate showing of either a reasonable attempt to effectuate service or the necessity of judicial intervention. Begin with the first requirement. By their own timeline, counsel for Petitioners emailed Respondent's local arbitration counsel just two days before the statutory deadline asking them to waive service. (ECF No. 1-4 at 3.) In particular, Petitioners' counsel acknowledged the looming deadline, writing "I am afraid I need to know by the close of business tomorrow, otherwise the timing is such that I will have to file a motion with the court under FRCP 4(f)(3)." (*Id.*) Respondent's arbitration counsel denied the waiver, indicating they did "not have authority to waive or accept service." (*Id.* at 2.) Then, on the final day of the three-month period, Petitioners' counsel again emailed Respondent's arbitration counsel, attaching a copy of the Petition. (ECF No. 11-3 at 2.) Respondent's arbitration counsel reiterated their lack of authority to accept or waive service. (ECF No. 11-6 at 2.)

Those two emails do not constitute a reasonable attempt to effectuate service. For one thing, though seeking Hague Convention service is not *per se* required in order to qualify for alternative service under Rule 4(f)(3), *see Aircraft Engine*, 2021 WL 6621578, at *1, its absence ordinarily weighs against a finding of reasonable effort, *see In re GLG Life Tech Corp. Sec.*

*Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ("[T]here will undoubtedly be many instances where significant efforts to make service under the Hague Convention should be required by a court before alternative service is ordered."). Indeed, the purpose of this threshold inquiry is not to greenlight "whimsical" approaches to service in circumvention of the rules, but to, where necessary, "obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile." *Ryan v. Brunswick Corp.*, No. 02-CV-133, 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002) (citing Wright & Miller, *Federal Practice & Procedure*: Civil 2d § 1134 (1990)). Here, Petitioners identify no reason that proper service would be either "unduly burdensome" or "likely futile." To the contrary, that Petitioners' counsel evidently knew that what he was attempting was insufficient service, that Respondent's arbitration counsel twice objected, that Petitioners never once attempted any procedure permitted under the Hague Convention, and that Petitioners did not seek this Court's order prior to the expiration of the limitations period, all compel the Court to conclude that Petitioners did not make a reasonable attempt to serve Respondent. Petitioners' primary case, *W.J. Deutsch*, all but dictates that result, because there, Chief Judge Swain was satisfied that a petitioner who attempted service "via mail, email, international courier, and through Spain's Central Authority" had made a reasonable attempt. 2023 WL 5609205, at *7. Here, Petitioners' attempt was not nearly as exhaustive or compliant.

     Likewise, Petitioners have not made an adequate showing that judicial intervention is necessary. On that score, Second Circuit cases concerning Rule 5's requirements for serving domestic respondents are instructive. In that situation, the Second Circuit has held that an attempt at email service is insufficient to overcome the FAA's three-month limitations period, and that nothing in Rule 5 authorized service by email in the absence of a written agreement.

*Dalla-Longa*, 33 F.4th at 697; *Martin v. Deutsche Bank Sec. Inc.*, 676 F. App'x 27, 29 (2d Cir. 2017) (summary order). That this case is controlled by Rule 4, rather than Rule 5, does not make it any more deserving of judicial intervention than the Second Circuit's prior cases. Moreover, the Rule 4 cases where courts have exercised their discretion to intervene often involve circumstances outside the parties' control, *e.g.*, *Convergen*, 2020 WL 4038353 ("Plaintiffs' attempts, the current pandemic, and the Central Authority's response all demonstrate that the request is far from 'whimsical,' and that this Court should exercise its discretion to order service pursuant to Rule 4(f)(3)."), or in which dismissal would harm the public interest, *e.g.*, *United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 267 (S.D.N.Y. 2012). Here, Petitioners were entirely responsible for their failure either to properly serve Respondent or to make a reasonable attempt within the time period imposed by federal statute. Therefore, the Court declines to exercise its discretion to grant *nunc pro tunc* Petitioners' request for alternative service under Rule 4(f)(3).

Finally, Petitioners are not entitled to equitable tolling of the FAA's three-month limitations period. Any such exception stands on already shaky ground, as the Second Circuit held recently that there are no statutory or common-law exceptions to the rule. *Dalla-Longa*, 33 F.4th at 697. Though the Second Circuit did not reach the question of whether there may ever be an equitable exception to strict compliance with that period, it is irrelevant in this case, as Petitioners have "not shown any equitable reason for excusing [their] failure to serve [the] petition properly." *Id.* at 697-98. Petitioners were aware of the applicable service requirements, aware that Respondent's arbitration counsel lacked the authority to waive or accept service, aware that a Rule 4(f)(3) order could be sought before the deadline, and nevertheless chose to send two emails on the eve of the statutory deadline. Moreover, Petitioners now come to this

Court with novel theories—obviously developed after the limitations period passed—contending that the parties had actually agreed all along to toll the limitations period pending redactions and had also consented to email service. If Petitioners' failure to make a reasonable effort did not condemn their request for an equitable exception, their *post hoc* justifications for that failure would.

Accordingly, the Court concludes that Petitioners failed to effectuate service of the Petition in compliance with 5 U.S.C. § 12, and that dismissal is therefore warranted under Rule 12(b)(5).

### III.  Conclusion

For the foregoing reasons, Respondent's motion to dismiss the Petition is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 25 and to close the case.

SO ORDERED.

Dated: January 29, 2025
       New York, New York

                                              J. PAUL OETKEN
                                    United States District Judge